IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| RYAN DOUGLAS KNOCH, | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-00970-CRE |
| | ) | |
| vs. | ) | |
| | ) | |
| THE UNIVERSITY OF PITTSBURGH, DR. PATRICIA BEESON, KENYON BONNER, BARBARA RUPRECHT, ANTHONY BLEDSOE, CYNTHIA TANANIS, JENNIFER SENG, JANE DOE, AND; JOHN DOE (#1), AND; AND JOHN DOE (#2), | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) | |

### MEMORANDUM OPINION

CYNTHIA REED EDDY, United States Magistrate Judge.

This matter is before the Court upon Plaintiff Ryan Douglas Knoch's ("Plaintiff's") Motion for Preliminary Injunction. [ECF No. 2]. In his motion, Plaintiff alleges that the Defendants violated his due process and equal protection rights under Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681(a), *et seq*., and 42 U.S.C. § 1983 in taking disciplinary action against him and suspending him from the University of Pittsburgh's (the "University's") Swanson School of Engineering. Plaintiff seeks a Court Order directing the University to allow Plaintiff to register for classes at the University for the Fall 2016 and Spring 2017 semesters notwithstanding his suspension. In the underlying Complaint, Plaintiff also seeks monetary damages for his financial loss, psychological and emotional distress, loss of standing in his community, damage to his reputation, his family's unreimbursed out of pocket expenses incurred in response to his suspension, and attorneys' fees and costs.

A preliminary injunction hearing was held on August 22, 2016. At the hearing, the Court

1

heard from Richard Fann, a University Judicial Board Hearing Panel member, Barbara Ruprecht, the University's Student Conduct Officer, Cynthia Tananis, a University Review Board member, Kenyon Bonner, the University's Vice Provost and Dean of Students and Plaintiff Ryan Knoch. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.[1] For the reasons that follow, Plaintiff's Motion for Preliminary Injunction is denied.

I. FINDINGS OF FACT

Plaintiff has been enrolled as a student at the University since Fall 2012. Joint Stip. [ECF No. 21] at ¶ 1. Plaintiff has to complete fourteen credits, or approximately one semester, to graduate. Tr. at 149. The facts underlying the instant action concern Plaintiff's suspension from the University of Pittsburgh's Swanson School of Engineering for alleged violations of the Student Code of Conduct ("Code"). Joint Stip. at ¶ 12. Plaintiff was alleged to have violated the Code in connection with his interaction with a female University Student, J.S. that occurred on January 28, 2016. Tr. at 46; Pl's Ex. 8 1/28/16 Judicial Referral. On that date, an argument ensued between Plaintiff and J.S. at J.S.'s residence. Pl.'s Ex. 8 1/28/16 Judicial Referral. The two were in or had been in a romantic or intimate relationship. *Id*. During the incident, Plaintiff is alleged to have placed his hands on J.S. in a way that could cause bruising and threw her laptop off of her kitchen table. *Id*. J.S. contacted the City of Pittsburgh Police Department who arrived on the scene. *Id*. Plaintiff was then arrested by the City of Pittsburgh Police Department and charged in Allegheny County with one count of Simple Assault and one count of Criminal Mischief. Joint Stip. at ¶ 7. These charges were later withdrawn at the magisterial level after Plaintiff completed twenty-four sessions of a batterers intervention class. *Id*. at ¶¶ 2-3. On that

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide motions for preliminary injunction and dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq*.

same date, a University complaint alleging that Plaintiff violated certain Code provisions, also referred to as a Judicial Referral, was filed against Plaintiff by University Police Officer Jonathan Beck who responded to the call involving the domestic dispute between Plaintiff and J.S. *Id*. at ¶¶ 9-11.

### a. *University of Pittsburgh Student Code of Conduct and Judicial Procedures*

The University Student Code of Conduct and Judicial Procedures establishes procedures by which it adjudicates alleged conduct violations involving its students. Def.'s Ex. 1 2015 University Student Code of Conduct. Under the Code, ""[a]ny University official or member of the University community may institute a proceeding against a student . . . by filing a judicial referral with the Office of Student Conduct." *Id*. at 17. The Code defines a "judicial referral" as "a report filed regarding violations of the Code," *Id*. at 13, which must set forth the Code violation(s) alleged to have occurred, the parties to the alleged Code violation(s), the facts surrounding the alleged violation(s), and any witnesses to the alleged violation(s). *Id*. at 17.

The Code grades the severity of the judicial referral based on incident levels as to the alleged conduct. *Id*. at 14-19. Here, Plaintiff's alleged violation was graded as a Level II incident. Tr. at 67. Once a Level II incident judicial referral has been filed, a disciplinary conference is scheduled in order to allow a Student Conduct Officer to review the charges with the alleged offender. Def.'s Ex. 1 2015 University Student Code of Conduct at 19. At this meeting, the respondent is permitted to elect to hold a full hearing before the University's Judicial Board to determine the veracity of the alleged Code violations. *Id*. At the Judicial Board hearing, the Student Conduct Officer serves as moderator and three Judicial Board Members sit as panel members during the hearing. *Id*. at 19-20. The student is not permitted to a full "legal" evidentiary hearing and no technical rules of evidence are applied at the hearing. *Id*. However,

3

the Student Conduct Officer in serving as the moderator controls the admissibility of evidence at the hearing and is guided by the "[r]easonable rules of relevancy" in determining whether evidence or testimony is admissible. *Id*. at 20.

After a Judicial Board hearing is held, the Judicial Board renders a decision and submits a recommendation to the Vice Provost and Dean of Students for final adjudication or decision. *Id*. at 19; 22. The Dean of Students may adopt the Judicial Board's recommendation or alter the recommended sanctions "if he or she believes that the totality of circumstances, including but not limited to any prior offenses and University precedents, justifies it." *Id*. at 22. The Dean of Students' final decision is then issued to both the complainant and the respondent. *Id*. at 22.

If the respondent disagrees with an adverse decision, the student retains the right to an appeal the decision to the University Review Board ("URB"). *Id*. at 22. The URB's scope of review is limited and may consider "whether rights affirmed by the Board of Trustees have been denied," whether the initial hearing was conducted "fairly and in conformity with properly prescribed procedures," and whether the findings and sanctions were "arbitrary and capricious" in nature. *Id*. at 23. The URB has discretion to determine the appeal based on the submission of the documents from the parties alone, with or without oral argument. *Id*. at 24. The URB then must render a final, written decision recommending action to the Provost, and may remand a matter to the Student Conduct Office for further proceedings if it determines that there are insufficient written findings or prejudicial procedural errors. *Id*. at 25. The Provost may either accept or reject the URB's recommendations. Pl.'s Ex. 29 at URB Rec. at 8.

  b. *Plaintiff's Alleged Violations of the University's Student Code of Conduct*

The Judicial Referral filed on January 28, 2016 alleged that Plaintiff violated three provisions of the Code in connection with his interaction with J.S. pertaining to physical abuse,

4

threat of physical abuse, and relationship violence. Joint Stip. [ECF No. 21] at ¶ 12.

Plaintiff was represented by counsel, and on February 4, 2016, Barbara Ruprecht ("Ruprecht"), the University's Student Conduct Officer, informed Plaintiff and his counsel that a Judicial Board Hearing would be held on February 25, 2016.[2] *Id*. at ¶¶ 13-15. On February 11, 2016, Plaintiff's counsel requested that three witnesses be permitted to testify at the February 25, 2016 hearing, including licensed psychologist Dr. Shannon Edwards. *Id*. at ¶ 16. Plaintiff sought for Dr. Edwards to testify as to the symptoms of mental disorders that J.S. allegedly reported suffering from and how those mental disorders would affect J.S.'s credibility at the Judicial Board Hearing. Tr. at 39-41. Ruprecht denied Plaintiff's counsel's request to permit Dr. Edwards to testify at Judicial Board Hearing, because Dr. Edwards had never treated J.S., and in Ruprecht's opinion, Dr. Edwards' proposed testimony regarding J.S.'s alleged mental disorders was not relevant to the issue of whether Plaintiff violated the University's Code of Conduct. Joint Stip. at ¶ 17.

On or about February 14, 2016, J.S. supplemented the January 28, 2016 Judicial Referral to include alleged events from August, October and November 2015 in which Plaintiff allegedly threatened, intimidated and/or used physical force against J.S. *Id*. at ¶ 18. At a meeting with Plaintiff, his counsel and parents shortly after J.S. supplemented the January 28, 2016 referral, Ruprecht informed Plaintiff that if he admitted responsibility or was found responsible for the violations of the Code for which he was accused, Ruprecht would recommend a two-term suspension for Plaintiff's infractions. *Id*. at ¶ 19. On February 16, 2016, Plaintiff's counsel requested and was granted a postponement of the February 25, 2016 Judicial Board Hearing in

---

[2] Ruprecht attempted to schedule a Judicial Board Hearing on the January 28, 2016 Judicial Referral on February 11, 2016 and February 18, 2016, but the parties were unable to mutually agree upon either date. *Id*. at ¶ 14.

5

order to properly investigate and prepare witnesses based on J.S.'s supplementation to the January 28, 2016 Judicial Referral. *Id*. at ¶¶ 20-21. The Judicial Board Hearing was rescheduled for March 17, 2016, to take place following the University's scheduled spring break. *Id*. at ¶ 22.

On or about March 1, 2016, Plaintiff filed a Judicial Referral against J.S. alleging various violations of the Code. He alleges that on a trip to Chicago he had taken with J.S. and her family in August 2015, J.S. had taken Plaintiff's debit card out of his wallet and used it without asking Plaintiff, and when Plaintiff confronted her, she pepper-sprayed him and threw his backpack out of the two-story apartment they were staying in. *Id*. at ¶ 23; Pl.'s Ex. 12 3/1/2016 Judicial Referral. Likewise, Plaintiff alleges in the Judicial Referral against J.S. that during the January 27, 2016 incident that occurred at J.S.'s apartment, and subject to the Judicial Referral filed against him, she punched him in the chest, and while she was flailing her arms, he put his hands on her arms to hold them down, possibly causing bruising. Pl.'s Ex. 12 3/1/2016 Judicial Referral. Plaintiff also included a complaint that J.S. had filed false allegations against him and provided misrepresented information to university officials and police officers about previous incidents. *Id*.

On March 8, 2016, Ruprecht informed Plaintiff that she would not join Plaintiff's March 1, 2016 Judicial Referral against J.S. to the January 28, 2016 and February 14, 2016 Judicial Referrals that were the subject of the rescheduled March 17, 2016 hearing. Joint Stip. at ¶ 24. But, Ruprecht informed Plaintiff that he was "free to reference any of the information contained in [his] referral as part of [his] testimony in that hearing, to the extent that the information [was] relevant." *Id*. at ¶ 25.

Pursuant to the University's Code of Conduct and Judicial Procedures, the University held a hearing before a three-member Judicial Board on March 17, 2016. *Id*. at ¶ 26. The three

6

members of the panel for the Judicial Board Hearing were Defendants John Doe #1 – Zachary Davis, John Doe #2 – Richard Fann, and Jane Doe – Carol Lippert. *Id*. at ¶ 27. Pursuant to the Code, Plaintiff's counsel was permitted to be present at the Judicial Board Hearing to act in an advisory role, but was not permitted to question the witnesses. *Id*. at ¶ 28. Plaintiff was appointed a law student from the University of Pittsburgh School of Law as his representative to question any witnesses. Tr. at 74. No contemporaneously created stenographic, audio, or video record of the March 17, 2016 Judicial Hearing exists, and the University does not create any records of any Judicial Board Hearings and destroys all notes made in the hearing. Joint Stip. at ¶ 29; Tr. at 11. Any contemporaneously created notes made by any person present at the Judicial Hearing, including notes made by Plaintiff, Plaintiff's advisor, Plaintiff's student representative, Plaintiff's counsel and the Defendants were not permitted to leave the hearing room and were immediately destroyed following the hearing. Joint Stip. at ¶ 30. Plaintiff alleges that a student witness, which the Court will refer to as "Dylan," testified as to J.S.'s untrustworthiness, but that exculpatory evidence was not cited in the Judicial Board recommendation and any evidence that Dylan testified was destroyed. Tr. at 44-45; 158-159.

By document dated March 17, 2016 and signed on March 22, 2016, the Judicial Board found Plaintiff responsible for violating three provisions of the University's Code of Conduct, and recommended that he be suspended from the University for two semesters and provide proof that he completed domestic violence classes as part of a court arrangement related to his January arrest. Joint Stip. at ¶ 31. On or about April 4, 2016, Defendant Kenyon Bonner, the University's Vice Provost and Dean of Students, approved the Judicial Board's recommendation. *Id*. at ¶ 32.

On April 8, 2016, Plaintiff timely appealed the decision of the Judicial Board to the three

member panel of the University Review Board ("URB"), and also sought a postponement of sanctions pending his appeal. *Id*. at ¶ 33. Plaintiff's motion to postpone sanctions pending his appeal was granted and he was able to complete his spring semester classes on April 26, 2016. *Id*. at ¶¶ 36-37. During this time, Plaintiff was only permitted to be on campus and only in University buildings during the time his classes were held. Tr. at 47-48; 176. He was not permitted to be on University grounds for any other reason. *Ibid*. The three members of the URB panel who received Plaintiff's appeal and motion to postpone sanctions were Defendants Anthony Bledsoe, Jennifer Seng and Cynthia Tananis. Joint Stip. at ¶ 34. In accordance with the University's Code of Conduct, Defendant Seng of the University's Office of General Counsel served as the URB moderator for Plaintiff's appeal. Joint Stip. at ¶ 35; Tr. at 100.

On May 17, 2016, Plaintiff was notified that his petition for appeal was denied. Joint Stip. at ¶ 38. Defendant Patricia Beeson, in her capacity as Provost for the University, signed the URB's Acceptance of Recommendation on May 12, 2016. *Id*. at ¶ 39. As a result, Plaintiff's two-term suspension was upheld and he remains ineligible to enroll in any classes at the University until Summer 2017. *Id*. at ¶ 40.

On or about May 27, 2016, Ruprecht contacted Plaintiff via email to schedule a meeting to discuss his March 1, 2016 Judicial Referral against J.S. *Id*. at ¶ 41. Plaintiff's referral against J.S. remains unadjudicated. Tr. at 158.

## II. CONCLUSIONS OF LAW

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008) (citations omitted). In determining whether a preliminary injunction should be granted, a district court must consider:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest

*Iles v. de Jongh*, 638 F.3d 169, 172 (3d Cir. 2011) (citations omitted). A plaintiff must produce evidence sufficient to prove all four factors for a court to issue preliminary injunctive relief. *The Pitt News v. Fisher*, 215 F.3d 354, 366 (3d Cir. 2000); *N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir.1995) (citation omitted). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enter., Inc.*, 176 F.3d 151, 153 (3d Cir.1999). Each factor will be considered in turn.

### A. Success on the Merits[3]

The Court of Appeals for the Third Circuit has recently explained that the degree of likelihood of success on the merits calls for "a sufficient degree of success for a strong showing … if there is a reasonable chance, or probability, of winning." *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015) (internal citations and quotation marks omitted) (applying standard for motion to stay under the Bankruptcy Code, but recognizing the obvious overlap with the factors in considering preliminary injunctive relief). "Thus, while it is not enough that the chance of success on the merits be better than negligible, the likelihood of winning . . . need not be more likely than not." *Id*. (internal citations and quotation marks omitted).

Generally, Plaintiff alleges two causes of action: a deprivation of his procedural due

---

[3] A district court is not bound by its findings and conclusions in deciding a motion for preliminary injunction in deciding future dispositive motions or deciding whether to grant permanent injunctive relief. "[A] decision on a preliminary injunction is, in effect, only a prediction about the merits of the case." *Morris v. Hoffa*, 361 F.3d 177, 189 (3d Cir. 2004) (citations omitted). "[T]he trial court 'is free to reconsider the merits of the case'" in determining future dispositive motions or whether to grant permanent injunctive relief. *Id*. (citations omitted).

process rights and equal protection rights under both Title IX[4] and the Fourteenth Amendment to the United States Constitution.[5]

      i.      <u>Due Process</u>

As for Plaintiff's procedural due process claim, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The protections required under due process are not static; "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Thus, "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (citations and internal quotation marks omitted).

---

[4]    Title IX provides that: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance...." 20 U.S.C. § 1681(a). The United States Supreme Court has recognized that Title IX includes an implied private right of action. *Cannon v. University of Chicago*, 441 U.S. 677, 717, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

[5]    Plaintiff brings his constitutional claims pursuant to 42 U.S.C. § 1983. Section 1983 of the Civil Rights Act provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. To establish a claim under Section 1983, "a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir.2000).

In the present context, the Supreme Court has assumed, without deciding, that students of public institutions of higher learning have a constitutionally protected property interest in their continued enrollment.[6] *See Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 222, 106 S. Ct. 507, 511, 88 L. Ed. 2d 523 (1985). A student charged with misconduct may not be suspended from a public school without the minimum procedures required by the due process clause. *Goss v. Lopez*, 419 U.S. 565, 574, 95 S. Ct. 729, 736, 42 L. Ed. 2d 725 (1975) (recognizing that public education implicates property and liberty interests protected by the due process clause and "may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."). Where a student is suspended for a time period greater than ten days, due process requires more formal procedures. *Id*. at 584. The general procedural due process factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1975) should be considered in this context:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substantive procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Plaintiff first alleges that his due process rights were violated because the University limited the evidence he sought to present at the Judicial Board Hearing when Defendant

---

[6] There is an open question under Pennsylvania law as to whether the University of Pittsburgh is a "state-related institution" under the University of Pittsburgh – Commonwealth Act, 24 P.S. §§ 2510-202(6), such that its student handbook does not form a contract with its students, or such that it could avoid any constitutional obligation. *See Gati*, 91 A.3d 723, 730 n.12. Because Plaintiff did not bring a breach of contract cause of action, and neither parties make the distinction of the University's identity under Pennsylvania law, the Court will not draw a distinction here. Further, the University "should not expect to use its unique state-related status to avoid any obligation to its students under either due process or contract law." *Id.* at 731. *See also Walsh v. Univ.*, 2015 WL 128104 at 7 (recognizing the University of Pittsburgh's distinct status under Pennsylvania law).

Ruprecht did not allow Dr. Edwards to testify on the issue of J.S.'s credibility at the March 17, 2016 Judicial Board Hearing. Due process does not require that a student be permitted to enter all favorable evidence and Plaintiff cites to no legal authority for the proposition that a non-treating physician be permitted to provide expert testimony as to the mental faculties and credibility of an accuser at the disciplinary hearing. *See e.g., Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987) (disciplinary proceedings need not follow formal rules of evidence); *Murakowski v. Univ. of Delaware*, 575 F. Supp. 2d 571, 586 (D. Del. 2008) ("a full-scale adversarial proceeding similar to those afforded to criminal defendants, nor an investigation, which would withstand such a proceeding, is required to meet due process. . . . Although a university must treat students fairly, it is not required to convert its classrooms into courtrooms."). Likewise, the Code explicitly provides that no technical legal rules apply to a Judicial Board Hearing and provided Ruprecht with the discretion to disallow witnesses if their proffered testimony was irrelevant to the alleged Code violations.

Plaintiff next alleges that his due process rights were violated because the University's policies and procedures established a practice that forbids a contemporaneous record being made of the Judicial Board Hearing and no record of Plaintiff's hearing exists outside of what is written in the Judicial Board Panel's recommendation, thus rendering any subsequent review of the hearing factually impossible. While the Court does take pause with the fact that the University does not create a contemporaneous record of the **only** fact finding proceeding in its disciplinary process, ostensibly rendering a *de novo* review impossible, again, Plaintiff points to no legal authority, nor does he make a legal argument, which would require that the University to maintain a complete record of Plaintiff's disciplinary proceeding. Therefore, without legal justification, the Court cannot make a determination of whether he is likely to succeed on the

merits of this claim.

Plaintiff next alleges that his due process rights were violated because the University's policies and procedures forbids a licensed attorney to act in that capacity, and Plaintiff's attorney could not act in that capacity at the Judicial Board Hearing by questioning any witnesses or presenting Plaintiff's case. It is possible that the policy of not allowing a licensed attorney to act on behalf of the accused during the hearing, and only be present, may implicate due process violations, as Plaintiff faced a two-semester suspension and thus required more formal procedures to take away his liberty and property interests in his continued education. *See Goss*, 419 U.S. 581-83 (recognizing no right to counsel for a student facing suspension of ten days or less, but silent as to the right to counsel for suspensions greater than ten days); *Gabrilowitz v. Newman*, 582 F.2d 100, 106 (1st Cir. 1978) (requiring assistance of counsel due to potential compromise of the student's rights due to pending criminal proceeding arising from the same events); *but see Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 640 (6th Cir. 2005) (finding no right to counsel in disciplinary hearing where the proceeding was not procedurally complex, there were no rules of evidence, the student was permitted to present his defense to the committee and to rebut any adverse testimony while addressing his version of the events). However, because Plaintiff points to no legal authority on this point, and makes no legal argument, the Court will not assume that he is likely succeed on the merits of this claim.

Plaintiff next alleges that the Judicial Board Hearing Panel failed to consider and include in its recommendation exculpatory evidence presented by Plaintiff at the hearing, including testimony from Dylan regarding J.S.'s proclivity for untrustworthiness. As explained *supra*, due process does not impose any requirement of what evidence a review board must consider in making its determination. It simply provides that the student be provided the opportunity to

merits of this claim.

Plaintiff next alleges that his due process rights were violated because the University's policies and procedures forbids a licensed attorney to act in that capacity, and Plaintiff's attorney could not act in that capacity at the Judicial Board Hearing by questioning any witnesses or presenting Plaintiff's case. It is possible that the policy of not allowing a licensed attorney to act on behalf of the accused during the hearing, and only be present, may implicate due process violations, as Plaintiff faced a two-semester suspension and thus required more formal procedures to take away his liberty and property interests in his continued education. *See Goss*, 419 U.S. 581-83 (recognizing no right to counsel for a student facing suspension of ten days or less, but silent as to the right to counsel for suspensions greater than ten days); *Gabrilowitz v. Newman*, 582 F.2d 100, 106 (1st Cir. 1978) (requiring assistance of counsel due to potential compromise of the student's rights due to pending criminal proceeding arising from the same events); *but see Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 640 (6th Cir. 2005) (finding no right to counsel in disciplinary hearing where the proceeding was not procedurally complex, there were no rules of evidence, the student was permitted to present his defense to the committee and to rebut any adverse testimony while addressing his version of the events). However, because Plaintiff points to no legal authority on this point, and makes no legal argument, the Court will not assume that he is likely succeed on the merits of this claim.

Plaintiff next alleges that the Judicial Board Hearing Panel failed to consider and include in its recommendation exculpatory evidence presented by Plaintiff at the hearing, including testimony from Dylan regarding J.S.'s proclivity for untrustworthiness. As explained *supra*, due process does not impose any requirement of what evidence a review board must consider in making its determination. It simply provides that the student be provided the opportunity to

present evidence and make arguments in his favor. It is undisputed that Plaintiff was permitted to enter any exculpatory evidence he deemed worthy of submission, other than the testimony of Dr. Edwards, and was permitted to make any argument at the hearing that his conduct did not violate the Code. The Judicial Board omitting this alleged exculpatory evidence from its recommendation does not offend Plaintiff's due process rights to be heard in a meaningful manner.

Finally, Plaintiff alleges that the URB conducted evidentiary fact finding not permitted under the Code and dismissed Plaintiff's appeal without a hearing. As to the latter argument, the URB has discretion to determine the appeal based on the submission of the documents from the parties alone, with or without oral argument under the Code. The Code does not permit a re-hearing or submission of additional evidence as part of the appeals process, and the Court does not otherwise find that this violates Plaintiff's due process rights. As to Plaintiff's former argument that the URB conducted impermissible fact finding under the Code, it is unclear from the record what alleged fact-finding occurred and what, if any, departures from the Code occurred. While "[s]ignificant and unfair departures from an institution's own procedures can amount to a violation of due process[,]" Plaintiff does not develop this argument, therefore this Court cannot determine whether he is likely to be successful on the merits of any such claim. *Furey v. Temple Univ.*, 730 F. Supp. 2d 380, 396–97 (E.D. Pa. 2010).

    ii.  <u>Equal Protection</u>

Plaintiff claims that his equal protection rights were violated because the University timely accepted J.S.'s first and second judicial referrals against him, while it waited eighty-six days to accept Plaintiff's judicial referral against J.S. Further, Plaintiff claims that the University immediately placed restrictions on Plaintiff after J.S.'s judicial referrals against him were

14

received, while no restrictions were placed on J.S. after Plaintiff filed his judicial referral against her.

In order for a Plaintiff to bring a successful equal protection claim, he must "prove the existence of purposeful discrimination. [He] must demonstrate that [he] 'receiv[ed] different treatment from that received by other individuals similarly situated[.]" *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990) (quoting *Kuhar v. Greensburg–Salem Sch. Dist.*, 616 F.2d 676, 677 n. 1 (3d Cir.1980)). To prove discrimination based upon gender, "a plaintiff must show that any disparate treatment was based upon his gender." Similarly, under Title IX, Plaintiff must demonstrate that he was subjected to discrimination under any education program or activity receiving Federal financial assistance. 20 U.S.C. § 1681(a).

Here, Plaintiff has made at least a *prima facie* showing that his equal rights were violated when the University took eighty-six days to accept his judicial referral against Plaintiff, while immediately accepting the judicial referrals made by J.S, a female student. Likewise, as soon as the judicial referral was levied against Plaintiff, he was placed on restricted access on campus, whereas J.S. was placed on no such restriction when Plaintiff levied the judicial referrals against her. In their brief, Defendants merely argue that the University's deferral of Plaintiff's judicial referral against J.S. has no bearing on whether the University should be enjoined from enforcing its two-term suspension against Plaintiff because the allegations levied against each student are separate and distinct. Defendants' argument misses the point; the University's enforcement of Plaintiff's suspension has no bearing on Plaintiff's claim that he was treated differently than a female student under the same underlying events. However, at the hearing, Ruprecht testified that she did not place J.S. on an interim suspension after Plaintiff filed a referral against J.S. because the referral was filed by a student, and not the police, as was the referral against

Plaintiff, there was no arrest, the incidents alleged in Plaintiff's referral against J.S. were past incidents and not contemporary, and the actual allegations were not as serious as those levied against Plaintiff. Tr. at 87. Taking this testimony into consideration, it is unlikely that Plaintiff can succeed on his equal protection claim for failing to place J.S. on interim suspension, as the two are not similarly situated. As to Plaintiff's claim that his equal protection rights were violated because the University failed to immediately accept and commence the adjudicatory process of his referral against J.S., a *prima facie* showing is not enough to find a likelihood of success on the merits, and Plaintiff has not otherwise proven he is likely to succeed on this claim. Accordingly, the Court cannot find this factor in Plaintiff's favor.

### B. Irreparable Harm

The second factor in deciding a motion for preliminary injunction requires that a plaintiff demonstrate a "clear showing of immediate irreparable injury." *Cont'l Grp., Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 358 (3d Cir. 1980). An injury that is merely serious or substantial alone does not demonstrate an irreparable injury; the injury must be of a peculiar injury, such that monetary compensation alone cannot atone for it. *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977). A plaintiff must demonstrate a potential harm which cannot be redressed by a legal or equitable remedy following trial; the preliminary injunctive relief must be the **only** way of protecting the Plaintiff from harm. *Id*.

Plaintiff alleges that he needs to complete fourteen credits to fulfill his degree requirement and without being permitted to register and attend class in the Fall 2016 semester, he will not be able to earn his degree until December 2017. He alleges that his suspension will cause him to suffer loss of income, loss of career experience and professional reputation and loss of continuity of education.

The Court finds that these injuries are not irreparable.  Primarily, any loss of income Plaintiff will suffer by not timely entering the workforce because of his suspension can undeniably be compensated by monetary damages and does not qualify as irreparable harm. *See Howe v. Pennsylvania State Univ. - Harrisburg*, No. CV 1:16-0102, 2016 WL 393717, at *6 (M.D. Pa. Feb. 2, 2016) *appeal dismissed* (Mar. 29, 2016).  Likewise, other courts have found that interruption of a student's education, while a genuine injury, is not irreparable. *See Schulman v. Franklin & Marshall Coll.*, 371 Pa. Super. 345, 349, 538 A.2d 49, 51-52 (1988) (finding no irreparable harm to suspended student who suffers "a delay in his educational process but will not lose the opportunity, by virtue of a suspension to complete his college training[.]"); *Howe*, 2016 WL 393717 at *6 (a student suspended for one semester could not show irreparable harm for the loss of continuity of his education where the classes he needed to take to complete his education were only offered in the spring semester, such that his suspension would effectively run for two semesters and he could not show that he would have graduated on time regardless of the suspension).

The Court finds that while Plaintiff will suffer injury by not timely graduating because of his suspension, this injury is not irreparable.  Plaintiff has only offered mere speculation that he would be unable to enter the workforce due to his suspension and any interruption of his education and delay in entering the workforce can adequately be compensated by monetary damages should he be successful on the merits of his claims.  He offered no evidence that he has been rejected for any employment position because of his suspension.  It is also speculative that he would lose any professional connections by virtue of his suspension, as he has not alleged that his suspension would prevent him from continuing to foster any networking connections he has through the University in the engineering field.  Likewise, any record of his suspension can be

ordered removed from University records should he succeed on his claims.

Defendants also urge this Court to consider Plaintiff's delay in filing for his preliminary injunctive relief as a reason to find he will suffer no irreparable injury. Plaintiff filed his Motion for Preliminary Injunction on July 11, 2016, thirteen days after he filed his complaint and two months after Provost Beeson accepted the URB's recommendation May 12, 2016 and the adjudication process ended. Plaintiff provides no excuse for failing to file his motion for preliminary injunction until two months after he was put on final notice of his suspension, and approximately a month and a half before the commencement of the Fall 2016 semester. While his delay is not determinative, as Plaintiff has failed to otherwise show irreparable harm, his delay in seeking preliminary injunctive relief tends to negate the immediacy of his alleged irreparable harm.

Accordingly, Plaintiff has not shown that he will suffer irreparable injury if the injunction does not issue.

### C. Harm to Non-moving Party

In considering this factor, and particularly where the parties "present competing claims of injury," the court "balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 1803, 72 L. Ed. 2d 91 (1982) (quoting *Yakus v. United States*, 321 U.S. 414, 440, 64 S.Ct. 660, 675, 88 L.Ed. 834 (1944)). In other words, the court "must undertake to balance the hardships to the respective parties." *Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998).

This factor appears to tilt slightly in favor of the University. While Plaintiff's reinstatement at the University for the Fall 2016 semester would benefit Plaintiff by permitting

18

him to continue his education uninterrupted, Plaintiff's reinstatement would cause greater harm to the University's ability to discipline its students accused of misconduct without resorting to judicial intervention and its ability to protect its students from harmful conduct and maintain order on campus.

*D. Public Interest*

The final factor considers "whether there are policy considerations that bear on whether the order should issue." *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 598 (W.D. Pa. 2009) (quoting 11A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE § 2948.4 at 200–01 (2d ed. 1995)).

In the present case, this factor is neutral. While the public's interest in pursuing education free of constitutional violations is undeniable, *see Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.*, 347 U.S. 483, 493, 74 S. Ct. 686, 691, 98 L. Ed. 873 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294, 75 S. Ct. 753, 99 L. Ed. 1083 (1955), an educational institution's authority to make disciplinary decisions without having to resort to court intervention is a substantial public interest. Requiring so would substantially weaken the institution's legitimate disciplinary authority among its students and be detrimental to the public interest, as educational institutions encourage their students to conduct themselves as model citizens in adhering to any applicable code of conduct. *See Bleicker v. Bd. of Trustees of Ohio State Univ., Coll. of Veterinary Med.*, 485 F. Supp. 1381, 1389 (S.D. Ohio 1980) (finding that an educational institution has a considerable interest in protecting the integrity of its disciplinary regulations and a court's intervention into the affairs of the college would "substantially weaken its legitimate authority among its own students" and members of the profession, causing a public disservice).

19

## III. CONCLUSION

Accordingly, based on the foregoing, Plaintiff's Motion for Preliminary Injunction is DENIED. An appropriate Order follows.

DATED this 31st day of August, 2016.

BY THE COURT:

s/Cynthia Reed Eddy
United States Magistrate Judge